UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

DENISE M. SEYBOLD, f/k/a DENISE REIGEL,

      Plaintiff,

v.

THE WELD COUNTY SHERIFF'S OFFICE,
a/k/a THE WELD COUNTY SHERIFF'S DEPARTMENT,
BY AND THROUGH THE SHERIFF OF WELD COUNTY, COLORADO, JOHN E COOKE,
in his individual and official capacity

      Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, by and through her undersigned attorney, for her Complaint against the

Defendants, states and alleges the following:

### JURISDICTION AND VENUE

1. This Court's jurisdiction and venue is invoked pursuant to 28 U.S.C. §§1331, 1342, and 1367. This action arises from widespread, longstanding employment-related and like or similar violations of the First, Fifth and Fourteenth Amendments to the U.S. Constitution and the Colorado Constitution, as protected and enforced by 42 U.S.C. §§ 1983. Plaintiff further seeks to invoke this Court's pendent, supplementary or ancillary jurisdiction over Plaintiff's related claims against Defendants which arise under the Constitution and the laws of the State of Colorado.

1

2. Venue is proper in this Court because all of the acts, omissions and other matters referred to, or complained of herein occurred, or failed to occur, in Weld County, Colorado, in the course or scope of Plaintiff's employment, as a longterm employee as one of Defendants' Deputy Sheriffs, where those parties continue to reside, operate, and/or conduct their governmental work or operations under the color of State law, in this Court's Judicial District, in which the EEOC lawfully conducted its investigation of certain of these matters and duly issued the attached Determination and Notice of Right to Sue in regard thereto, which are labeled as Exhibits 1and 2, respectively.

3. Defendant is, and has been, during the past few years, a duly elected Colorado State Constitutional and statutory officer–viz., the Sheriff of Weld County, Colorado, and accordingly Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., Title I of the Civil Rights Act of 1991, and the corresponding provisions of the Colorado Employment Practices Act, as amended, C.R.S. 24-34-401, *et seq*. To the fullest extent permitted by such laws to make Plaintiff whole and to fully compensate her and to duly punish Defendant therefor, Plaintiff seeks any and all relief and remedies available to her thereunder, to remedy Defendants' broadbased, longstanding pattern or practice of unlawful employment discrimination, and invidiously discriminatory, overtly hostile, and abusive employment practices, sanctioned retaliation, and maintenance, preservation, and furtherance of an overtly hostile and abusive work and deviant or perverse sexual environment under the color of State law and the Defendant Sheriff's State Constitutional power and authority.

**ADMINISTRATIVE PROCEDURES**

4. The EEOC 's lengthy and thorough investigation of certain of these matters culminated in the issuance of a "probable cause" finding and Final Determination, Exhibit 2, followed its issuance of a Notice of Right to Sue dated 02/04/08. In pertinent part, that Determination found and concluded that " . . . there is reasonable cause to believe that the Charging Party was denied a promotion and a transfer due to her sex (female). Furthermore, the evidence showed Charging Party was subjected to retaliation. The evidence also revealed that Respondent violated the recordkeeping requirements of Title 29 C.F.R. § 1602.14 by failing to retain records for the required time period,"

5. As more fully set forth in the attached Exhibits, the Plaintiff has duly complied with all conditions precedent to the prosecution and maintenance of this action.

**NATURE OF THE CASE**

6. At all times relevant, since 1988 to present, the Plaintiff was, and is, an employee of Defendants where she presently serves as a Corrections Officer III, in an "armed" position in Defendants' Offender Supervision Bureau. Following Plaintiff's filing of a charge or complaint of sexual harassment and a grievance alleging certain obstructions of her legally protected rights and interests in and to her ongoing governmental employment, as well as violations of certain provisions of the Weld County Code and the Weld County Sheriff's policies and procedures relating thereto, Plaintiff has been repeatedly passed over for and otherwise denied promotions and transfers, and has been otherwise retaliated against in the terms and conditions of her employment in response thereto, in accordance with a longstanding and broadbased pattern, practice, or custom, in direct

        contravention of Plaintiff's exercise of these and other related rights and her reliance thereon, as same have been further enumerated under the Weld County Code, the Weld County Sheriff's Office Policy Manual, the laws of the United States and the U.S. and Colorado Constitutions, and Plaintiff continues to be harmed by the existence and maintenance of such an ongoing invidiously discriminatory and overtly abusive, hostile, and perverse or deviant workplace and work environment, and the deliberate, willful and wanton, or reckless and callous disregard and deprivation of those foregoing rights, including, but not limited to, certain enumerated rights secured to the Plaintiff under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution, including her rights of privacy, free speech or expression, and of association—which are enforced, *inter alia*, in part by the provisions of 42 U.S.C. §§ 1983 and 1988, *et al.*

7. Furthermore, by attempting to exercise her employment related rights, Plaintiff has periodically been forced to unfairly endure various and sundry acts of targeted abuse. harassment, and other forms or manners of retaliation or retaliatory conduct, including being subjected to ongoing extraordinary scrutiny of her workplace activities, and like or similar bogus, sham, or pretextual investigations and reprimands founded or premised upon false, deceptive, misleading, inherently unreliable, untrustworthy and/or unreliable information.

**PARTIES**

8. The 41 year old female Plaintiff and longtime resident of Weld County, Colorado, has been continuously employed by the Weld County Sheriff's Office ("WCSO") a/k/a the

        Weld County Sheriff's Department ("WCSD") for 20 years, where she presently serves as a Corrections Officer III.

9. Defendant Cooke, a longtime resident of Weld County, Colorado, and member of the WCSO is sued in his official capacity as the duly elected, current Sheriff of Weld County, Colorado, whereby he accordingly continues to act and serve as the sole or primary operator and administrator or chief executive officer of the Weld County Jail and WCSO, and employer of the employees thereof, including those employees thereof who have been duly appointed and/or "deputized" by him as Deputy Sheriffs sworn to perform law enforcement or for jail custodial functions, services, and duties in his name and stead, who so act under his direction and control as his duly constituted agents or surrogates, pursuant to his instructions and lawfully vested official authority in regard thereto. In accordance therewith, any and all "official" acts, omissions, or actions ostensibly taken, performed, or not performed by his Deputies in the apparent or purported course, scope, or "line of duty", or otherwise under such color of law or badge of authority are as a matter of law regarded as, and considered and imputed to be, those of Defendant Cooke in his official capacity as the Weld County Sheriff, as more fully set forth by C.R.S § 30-11-406 and the section of the WCSO Manual identified as 2.1.0 and entitled "Command and Direction Policy," dated October, 2001.

## PLAINTIFF'S RELEVANT EMPLOYMENT RELATED HISTORY

10. Plaintiff began her employment with the WSCO in 1988 as a Records Technician III. She was belatedly rewarded by Defendant's predecessor for being an exemplary employee with a series of promotions in the mid to late 1990's.

11. Due to a wholly unfounded and subsequently disproven allegation of misconduct lodged against her in the late 1980's, Plaintiff was placed on a temporary administrative leave, pending the results of an investigation thereof conducted by Defendant Cooke in his capacity as a then Internal Affairs Investigator for Defendant WSCO.

12. Upon information and belief, during the course of the investigation, Defendant Cooke learned, much to his apparent chagrin or dismay, that Plaintiff was a remarkably candid, forthright, open, and honest WCSO employee, who freely "spoke her mind," and who genuinely endeavored to always do the "right thing" in the performance of her lawful or official duties.

13. Accordingly, upon information and belief, he apparently then began to perceive Plaintiff to be the anthesis of everything that a situationally honest, selectively observant, sexually charged WCSO "Good Ole Boy" ("GOB") either regularly and laconically or reticently tolerated or accepted, or actually exemplified or "stood for" in the course or scope of his official law enforcement duties.

14. Upon information and belief, he thereafter perceived her as being a potential threat to the ongoing security of all such WCSO GOBs, including himself, with whom she had, or might have, employment related contact, and was consequently determined to subsequently ensure that she would never be promoted to any position of high authority within WCSO, which would give her access to the closely held dirty secrets of the WCSO GOBs and their loyal followers.

15. By October, 1997, the mental and emotional impact of a highly stressful divorce had occasioned the Plaintiff's need for the treatment of symptoms of depression and anxiety.

Unfortunately, she thereafter sometimes became drowsy from the side effects of, or adverse reactions to, the dosages of Zoloft prescribed by that doctor. Moreover, both during this same period of time and for many months prior thereto, Plaintiff had been subjected to ongoing and blatant sexual harassment by a male co-worker. On October 21, 1997, her male supervisor, Geesaman, confronted Plaintiff about these problems, whereupon she explained to him in detail all of the previously undisclosed foregoing reaons for their occurrence. Intent on proving that she had lied to him about the cause of her recent performance-related problems, he promptly asked that co-worker if it was true that he had been sexually harassing the Plaintiff, whereupon the co-worker readily admitted having done so. Not only did that perpetrator not receive any appropriate measure or form of discipline, but both he and other similar WCSO sexual deviants or perverts have been repeatedly treated by Defendants "with kid gloves," promoted, and given regular periodic wage increases, and Defendants have likewise acted to steadfastly conceal or cover up or greatly "downplay" the invidiousness, seriousness, nature, and pervasive extent of such sexually perverse and lewd and lascivious behavior, conduct, and victimization of WCSO females in their workplace environment or setting. Indeed, that male co-worker presently is employed by Defendants in a position of significant authority, despite have continuously and repeatedly perpetrated with impunity such deviant and lewd sexual acts of a criminal nature upon other female employees of Defendants without any fear of recrimination or discipline in response thereto. All this is further evident from Good Ole Boy Geesaman's utterly despicable and unconscionable action in nonetheless forthwith issuing Plaintiff a written reprimand therefor replete with

materially false, deceptive, misleading statements, and which utterly concealed the facts that her underlying performance-related problems were partially attributable to the egregious repeated acts of sexual harassment perpetrated on her by another Good Ole Boy at the WCSO. The foregoing is also evident from Geesaman's action in further victimizing the distraught and emotionally and psychologically impaired victim of such acts of sexual harassment perpetrated by that preferentially treated Good Ole Boy by forcing her to change her work schedule to avoid further harassment by that co-worker. It is thus quite evident that both this entire incident and its concomitant unequal discipline was handled in a manner utterly repugnant and contrary to both the spirit and letter of Title VII and its Colorado equivalent, as well as to the Weld County Personnel Policy Manual's "no tolerance policy" (Section 3-3-50A) and to its mandated investigative procedures in regard thereto (Section 3-3-50F)–as further evidenced by the fact that the Plaintiff never received any notice of any such investigation thereof.

16. Despite being qualified and highly recommended by one or more of her superiors therefor, Plaintiff has unsuccessfully applied for no less than 11 Commander openings that have been filled by Defendant since 2002, only to have 10 of them unlawfully and altogether predictably filled by the often less qualified , but always preferred, Good Ole Boys "of a feather," undoubtedly because they can always be counted on to discreetly do far more than just "flock together," and to never violate the Defendants' guiding principle that "what plays at WCSO, stays at WCSO."

17. The foregoing is further evidenced by the fact that the policies and procedures for such career advancement that the Plaintiff and others similarly situated were advised to rely

upon were only unfairly, selectively, sporadically, arbitrarily, and capriciously adhered to, or followed or complied with.   Indeed, one recent addition to Defendants' Good Ole Boy Commander Club—Paul Glanz— was not, and is not, a Certified Police Officer, and does not meet the educational requirements, and is not otherwise qualified for, that position–matters which presumably account for his selection therefor without even having to take (much less, to somehow pass) the written test required of non-GOB applicants for such position.

18. When the next Commander opening was announced in July 2005, Commander Hettinger informed Plaintiff on July 11, 2005 via an interoffice memo that he would not recommend her for the Commander position, and that she accordingly was ineligible    to even apply for it.

19. Upon information and belief, such actions were consistent only with the inclusion of Plaintiff in some form or manner of a "do not promote" list complied and maintained by Defendants.  Shortly thereafter, Plaintiff filed a "formal" internal grievance in response thereto, pursuant to the Weld County Personnel Policy Manual, and therein stated that she knew that she would be subjected to discipline and retaliated against for having done so, which prompted distinguished disabled Double Dipper (DDDD) GOB Dill to take it upon himself to instruct Defendants' GOB hiring delegates to simply disregard the eligibility standards  previously established for, at least, certain Commander Club applicants, which had required them to first be recommended for such a position by their superior officer.

20. Particularly since the filing of that grievance on July 11, 2005, all of Plaintiff's actions and statements have been minutely, continuously, and unfairly scrutinized and <u>critiqued</u> or criticized, and she has been similarly given unfair reprimands and subjected to various and sundry types of virtually unprecedented sham or pretextual investigations even into matters of a strictly personal nature.   Indeed, on August 14, 2005, she was given such a verbal warning, followed by a like a written reprimand for the same incident without any consideration of Plaintiff's version of the events.   Without prior notice on October 28, 2005, a loyalist GOB Commander gave her an utterly unprecedented, materially false, misleading, overtly biased, hostile, abusive, unfair, libelous, and vexatious "evaluation" of a type never witnessed by her before.

21. Between October 28, 2005 and January 2, 2006, Plaintiff was out of work due to a medical leave of absence.   When she returned to work on January 6, 2006, she promptly appealed that evaluation.

22. On January 4, 2006, Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division and the EEOC.

23. On January 24, 2006, the Defendants were notified in writing by the Colorado Civil Rights Division of Plaintiff's Charge of Discrimination.

24. Thereafter, Defendant Cooke arbitrarily, capriciously, and callously retaliated and discriminated against Plaintiff in the course of perfunctorily concluding that her appeal thereof was untimely, despite the fact that she had been continuously absent from work pursuant to a medical leave of absence at all times prior thereto, and was accordingly unable to take the necessary action to protest that evaluation at any earlier point in time.

25. Then, on February 8, 2006, Plaintiff was suddenly and unexpectedly given the option of either undergoing an impromptu mysterious inquisition denominated as a "Supervisor Inquiry," or being likewise indefinitely placed on involuntary administrative leave.

26. On February 9, 2006, Plaintiff informed these Commanders that her attorney(s) had advised her not to answer or sign anything until she conferred with them in regarad thereto, whereupon she was promptly given a "Letter of Notice," that she was instructed to forthwith sign anyway.

27. This Deep Sea Fishing "Inquiry" of Plaintiff occurred eight days later, immediately after on of her two inquisitors informed her of her legal rights in regard thereto, as established in the case of *Garrity v. State of N.J.*, 385 U.S. 493 (1966), and as same have been summarized in what has accordingly been referred to as a "Garrity Notice."  After posing several highly intrusive questions regarding Plaintiff's personal life, her inquisitors were grudgingly compelled to clear her to return to work that same day.

28. Following Plaintiff's filing of her Charge of Discrimination on January 4, 2006, the Defendant Sheriff, a final decisionmaker, on March 1, 2006, announced  a new procedure entitled "Career Advancement and Assignment Opportunities, Directive Number 1.3.6," which states, in part, "... The Sheriff's Office and employees are required to comply with personnel policy established by the Board of Weld County Commissioners and the supplemental directives issued by the Sheriff's Office.  The new "Directive" for the selection process for the Offender Supervision Bureau Security Division contained "Guidelines, Definitions, Procedure, Minimum Job Requirements, Knowledge, Skills and

Abilities Credits, Temporary Assignments, and a 'Supervisor or/Commander Certification Form.'"

29. In April 2006, Defendants announced that another Commander position needed to be filled. Defendants the only female applicant therefor, Plaintiff passed the written test for that position before satisfactorily participating in the wholly subjective and standardless interviews conducted by the GOB members of the self-described "Assessment Center." Yet, Defendants inexplicably and wrongfully refused to fill that position with Plaintiff or any other applicant duly qualified to be eligible therefor. Despite repeated requests or demands therefor, neither Plaintiff, nor the EEOC, has ever been given either those test results or the specific candidate selection or promotion related criteria applicable hereto.

30. On May 15, 2006, the Plaintiff met with "Deputy Bureau Chief Geesaman" to discuss those candidate results, whereupon he informed her that he hadn't recommended any of the six candidates, regardless of their demonstrated eligibility therefor, contrary to the March 1, 2006 directive. Further contrary thereto, Geesaman had filled the two prior like or similar positions based solely upon the "results" of informal interviews.

31. On September 18, 2006, Plaintiff took another written exam for a newly announced Commander position, only to be inexplicably notified two days later by email that she would nonetheless not be allowed to again be interviewed by the "Assessment Center."

32. On October 18, 2006, Defendant Cooke announced (a) the appointment of Matthew Bridges to that position of Commander, and (b) that Officer Jeff Wilson would remain eligible for promotion to Commander in the event of a vacancy occurring within the Offender Supervision Bureau before the year's end.

33.  To increase her chances of promotion, Plaintiff also was actively pursuing a bachelor's degree through the University of Phoenix.  She accordingly requested, and duly received, permission for her use after work of the office computer for such educational purposes.  However, when Plaintiff began feverishly "cramming" for her impending final exams, that permission was suddenly shockingly, and callously revoked, thereby preventing Plaintiff from completing that course work, and from accordingly receiving $3,500 in tuition reimbursement monies attributable thereto, which in turn, prevented her from enrolling further at that University.

## GENERAL ALLEGATIONS

34.  The deleterious effects or impact of the malevolent malformation of the Republican Party into an endemically corrupt, morally bankrupt, and criminalized Republicon Party, has been particularly evident in that slavish bastion of such myopic "True Believers" known as Weld County where it has been especially pronounced evident in the operations of the Weld County District Attorney's Office and Weld County Sheriff's Office–which have become likewise insidiously corrupt "at the top," resulting further in their becoming invidiously discriminatory violators en masse of the civil rights of countless non-Republicon members of virtually every protected class with whom they have had contact in any official capacity.  Ultimate responsibility for this lies with the ongoing corrupt entanglements between politically well placed serial sex harasser Ken Buck and fellow GOB Defendant Cooke and his predecessor, Ed Jordan (the latter, who fittingly is now both the Weld County Republicon Party Chairman and, by default, an Investigator for that DA's Office, while the hyperlibidinous sexually insatiable profligate Undersheriff

and real estate broker/agent likewise now fittingly serves officially in such a Vice Chair capacity.

35. Like other such or similar broadbased, ongoing 1983 conspiracies, such principals are fully supported in all their conspiratorial endeavors by an exceedingly loyal and equally corrupt cadre of "hatchet" and "yes" men and women–in this case, who are of an overwhelmingly white male makeup, a number of whom are incompetent or disabled "double dippers."  In that regard, like Margie Martinez, the handful of high managerial level female Deputies at the Weld County Sheriff's Department tend to occupy such positions, at least in part, by virtue of that status and of their ongoing or recent intimate relationships with Defendant Cooke and/or one or more of those aforementioned white Republicon "yes" or "hatchet" men, whose countless misdeeds and malfeasance are always overlooked, concealed and/or covered up.

36. In contrast to the utterly absurd and pretextual reason for attempting to justify the sudden, wholly unjustifiable denial of Plaintiff's use of an office computer for her career advancement purposes, the omnipotent longtime Undersheriff Martinez was not only allowed to freely study for her real estate license(s), but also to continue to perform any and all such income producing activities and duties on County time, and to use those facilities, equipment, and services in connection therewith, as was her then paramour and business associate, then Weld County Sheriff Jordan, in connection with his related construction business, despite all of the obvious ongoing conflicts of interests and misuse of County time, facilities, equipment, and services in connection therewith.

**GENERAL PUNITIVE DAMAGES ALLEGATION**

37. Upon information and belief, the acts and/or omissions of Defendants, or their agents and employees described herein, were attended by malice or willful and wanton indifference or hostility to the protected employment rights or status of the Plaintiff and others similarly situated under the U.S. Constitution (First, Fifth and Fourteenth Amendments) and the laws of the United States and Colorado, so as to entitle Plaintiff to a reasonable award of exemplary damages, pursuant to 42 U.S.C.§1983, the Civil Rights Act of 1991, and C.R.S.§ 13-21-102, *et seq*., and other laws.

## FIRST CLAIM FOR RELIEF

38. Plaintiff incorporates by reference all preceding paragraphs and allegations as though fully set forth herein.

39. At all times relevant, the acts or omissions of Defendants, their agents or employees occurred or failed to occur under color of law or pursuant to Defendants' ostensible or purported official law enforcement authority, in accordance with such a longstanding, widespread, and broadbased, overtly abusive, unfair, hostile, and invidiously discriminatory, unlawful, unconscionable, and otherwise proscribed policy, pattern, practice, custom, habit or course of dealing or performance and maintenance and preservation of a like workplace environment.

40. Upon information and belief, the foregoing acts and omissions of Defendants violated Title VII of the Civil Rights Act of 1964, as amended, Title I of the Civil Rights Act of 1991, 42 U.S.C. §1983, and the reciprocal, corresponding or complementary provisions of the Colorado Employment Practices Act, in accordance with such a pattern, practice,

       policy or custom, directly and proximately resulting in the herein described injuries and damages to Plaintiff and others similarly situated.

41. Upon information and belief, the discriminatory employment practices, hostile work environment, retaliation, and other acts and omissions of the Defendants, their agents, and employees reflected or typified Defendants' deliberate, reckless, or willful and wanton indifference or hostility to the constitutionally, statutorily, and otherwise protected employment interests, rights, and status of Plaintiff and others similarly situated, directly and proximately resulting in such injuries and other damages to them as may be proven at trial, including but not limited to: a) lost income and benefits; b) lost employment opportunities, due to such unlawful and wrongful denials of promotion or transfers; c) psychological, emotional, or mental anguish, distress, upset humiliation, embarrassment, or degradation; d) pain and suffering; and, e) other consequential, incidental, or related damage to their character, reputation, and employment related rights and interests.

## SECOND REQUEST FOR RELIEF

42. Plaintiff incorporates by reference all preceding paragraphs and allegations as though fully set forth herein.

43. Defendants accordingly have thereby discriminated and retaliated against, and punished Plaintiff as a result of her speech regarding matters of public concern, including the foregoing deviations/violations of the Weld County Code, and of the prescribed governmental operations and procedures in regard thereto, in violation of the First

       Amendment to the U.S. Constitution and the Constitution and the laws of the State of Colorado.

44. Moreover, due to her exercise of these rights, the Defendants have interfered with the Plaintiff's freedom to speak and to associate or to not speak or not associate with others by and through such egregious, callous, willful and wanton, or deliberate ongoing acts of retaliation and recrimination.

45. All of the foregoing acts and omissions of the Defendants were also arbitrary, capricious, and retaliatory and in contravention of the substantive and procedural due process and equal protections afforded to Plaintiff and others similarly situated by the Fifth and Fourteenth Amendments to the U.S. Constitution.

46. Defendants have accordingly thereby engaged in a gross abuse of power, political patronage, unfair and unconscionable governmental operations and procedures, and gross disparate treatment through their perversion of their official duties and their personnel system while acting under color of State law, thereby so damaging Plaintiff and other individuals similarly situated, in further violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

47. As a direct, foreseeable, and proximate result of Defendants' foregoing acts or omissions, Plaintiff and others similarly situated, have suffered, and are likely to continue to suffer, such damages, injuries, and harm as may be proven at trial.

       WHEREFORE, the Plaintiff requests the Court to enter judgment hereon in her favor and against Defendants, which includes an award or grant of the following remedies or judicial relief:

       1)       A declaration that Defendants have violated the rights secured to Plaintiff and

others similarly situated by the First, Fifth, Fourteenth Amendments to the U.S. Constitution, 42 U.S.C.§1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, Title I of the Civil Rights Act of 1991, and the Colorado Employment Practices Act, as amended, 24-34-401, *et seq.*, to be free of such a pattern, practice, or custom of unduly intrusive related forms or manners of gender discrimination and retaliation in the terms and conditions of their employment, and of such an invidiously discriminatory and constitutionally and statutorily proscribed and infirm abusive and overtly hostile, unfair, and unjust work environments;

2) An award to Plaintiff of such compensatory damages as may be proven at trial in a sum that fully compensates her for her pain, suffering, and mental and emotional anguish, distress, and upset in this matter, and which includes appropriate awards of back pay, front pay, and reimbursement for any past lost benefits and expenses in amounts consistent with the salary and wage adjustments or increases attributable to such wrongfully and unlawfully denied promotion(s) in question.

3) An award of liquidated damages consistent herewith;

4) An injunction broadly prohibiting Defendants, their agents, employees, attorneys, personnel or related entities from attempting or endeavoring to retaliate or recriminate in any manner or way against Plaintiff or those similarly situated in relation hereto;

5) An award of Plaintiff's reasonable interest, Court costs and statutory attorney fees, pursuant to Title VII, the Civil Rights Act of 1991, and 42 U.S.C.§1988 and,

6) Such other and further relief as the Court deems appropriate in the interests of justice.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 2nd day of May, 2008.

>Respectfully submitted,
>
> s/ *Richard K. Blundell*
>Richard K. Blundell
>1227 8th Avenue
>Greeley, Colorado 80631
>Telephone: (970) 356-8900
>Facsimile: (970) 353-9977
>E-mail: mrrkblaw@mcleodusa.net
>ATTORNEY FOR PLAINTIFF

*** The Civil Cover Sheet and Complaint were filed electronically pursuant to U.S. District Court for Colorado electronic filing procedures CM/ECF system.*

Plaintiff's address:
29366 WCR 78
Eaton, Colorado 80165