**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  08-cv-00916-DME-MJW

DENISE M. SEYBOLD,

        Plaintiff,

v.

JOHN COOKE, SHERIFF OF WELD COUNTY, COLORADO,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

    This matter comes before the Court on consideration of Defendant John Cooke's

Motion for Summary Judgment.  (Doc. 196.)  Upon consideration of that Motion, Plaintiff

Denise Seybold's Response (Doc. 269), and the Defendant's Reply (Doc. 274), the

Court hereby GRANTS Defendant's motion in full.

## <u>Introduction</u>

    In this action, Denise Seybold is suing her former employer, John Cooke, Sheriff

of Weld County, Colorado ("the Sheriff"), for the Sheriff's failure to promote her to the

position of Commander, as well as for a number of associated incidents of claimed

discrimination and retaliation.  Ms. Seybold brings five claims against the Sheriff: (1)

disparate treatment and retaliation under Title VII of the Civil Rights Act of 1964; (2)

retaliation for speech protected by the First Amendment; (3) violation of due process

and equal protection under the Fourteenth Amendment; (4) "false detention" in violation

of the Fourth and Fourteenth Amendments; and (5) retaliatory interference with medical

benefits in violation of the Employee Retirement Income Security Act ("ERISA").  Upon

consideration of the record evidence and the arguments of the parties, the Court will

grant the Sheriff's motion and enter judgment in his favor.

## Background

**Factual Background**

Denise Seybold was hired by the Weld County Sheriff's Office in July of 1988 as

a Records Technician III.  Over her more than twenty years with the Sheriff's Office, she

would eventually be promoted to the position of Corrections Officer III, and in that time

she worked both in the county jail and the county courthouse.

The events giving rise to this lawsuit occurred predominantly between 2004 and

2008, but a few incidents before that time frame are relevant to the issues at hand.

First, in 1988, while Seybold was still working as a records technician, she was

investigated by Internal Affairs on a charge of misconduct.   At that time, the Defendant,

John Cooke, was an Internal Affairs investigator for Weld County, and he was put in

charge of the investigation of Seybold.  Seybold was eventually cleared of those

charges, but in the course of the investigation, Seybold insists that Cooke called her a

liar and insisted that "he would have [her] job."  (Doc. 198, Exh. A-1 at 217.)[1]  Some

years later, but before Cooke became Sheriff, Seybold and Cooke had a closed-door

---

[1] The Sheriff moved to submit all of his summary judgment exhibits under seal, and Magistrate Judge Watanabe granted that motion until further order of the Court.  (Doc. 206 (Minute Order).)  As the Tenth Circuit has held, "[t]he court's business is public business."  Couch v. Bd. of Trustees of Mem. Hosp. of Carbon County, 587 F.3d 1223, 1245 n.25 (10th Cir. 2009).  The Court hereby unseals the summary judgment record (Doc. 198 Exh. A-1–A-17.).

-2-

meeting at which Cooke insisted that he did not hold grudges, but Seybold maintains that ever since the 1988 misconduct investigation Cooke has done just that against her.

The next significant incident occurred in 1997.  During that year, Seybold was going through a divorce from her first husband, and had been put on medication by her doctor for severe depression.  The medication made her drowsy, and at one point she began to nod off at her post.  Her supervisor, Sterling Geesaman, met with her and accused her of sleeping on the job, but in that meeting Seybold revealed to Geesaman that for more than a year, one of her co-workers had been, in her view, sexually harassing her.   The co-worker had subjected Seybold to inappropriate advances, sent her sexual messages, and finally touched her on the buttocks at work.   Geesaman interviewed both Seybold and her co-worker together, and in the end Seybold was transferred to a different shift and given a written reprimand for the sleeping incident. Neither her total hours worked, nor her ratio of night- to day-shifts was changed, however, and she did not suffer any reduction in pay or benefits.  The record does not reflect any actions taken against the co-worker, and no administrative records of the incident were produced by the Sheriff's Office.

### Seybold's Efforts to Secure a Promotion to Commander

Since 2002, Seybold has applied for, and been denied, the position of Commander eleven times.  Her most recent attempts came between 2004 and 2006.  In late 2004, Seybold had applied for an open position, and had obtained the recommendation of her supervisor, Commander Hettinger.  When that promotion was awarded to a male officer—an officer who, in Seybold's view, did not meet the job's

requirements—Seybold complained to Hettinger.   When the next Commander position

came available, in July of 2005, Commander Hettinger refused to recommend Seybold

for the position.  In doing so, he cited "a need for improvement in [her] decision-making

skills" and a tendency to look to her supervisors to make difficult decisions, rather than

coming up with her own solutions, as his reasons for not giving the recommendation.

(Doc. 198, Exh. A-3 (Memorandum).)  At that time, candidates for Commander positions

were not permitted to apply for the position without the recommendation of a superior.

Seybold filed a formal grievance, and the Sheriff's Office allowed her to take the

Commander test without a recommendation.  Seybold was not promoted to

Commander; a female officer from the jail division—who Seybold claims had less

experience than she did—was promoted instead.   After this round of applications, on

January 4, 2006, Seybold filed a charge of discrimination against the Sheriff's Office

with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil

Rights Division ("CCRD").

    Seybold again applied for the position of Commander in April 2006.  She was

allowed both to take the written test and participate in the skills-based Assessment

Center.[2]  Seybold was the only woman to apply for the position.  No one from this group

of applicants was promoted.  Seybold again applied for an open Commander position in

---

[2] Apparently the procedure for securing a Commander position changed numerous
times over the course of Seybold's attempts to secure a promotion.  At times only a
written test was required; at other times candidates also had to be personally
interviewed.  Finally, in 2006, candidates were also required to participate in a skills-
based Assessment Center as part of the process.  As Seybold has not claimed that any
particular set of testing procedures imposed a disparate impact on women seeking
Commander positions, the Court will not lay out the intricacies of all the variations of the
test.

September 2006, but this time she did not pass the written test, and thus did not advance to the Assessment Center.  One male officer was promoted to Commander from this round, and a second male officer was made eligible for the next Commander position to come available.

There are apparently seven Commander positions in the Offender Supervision Bureau, and two of those positions are occupied by female Commanders.  Seybold asserts that she—along with two other male officers—is on an informal "do not promote" list because she is not a part of the "good ole boy network," which encompasses both men and women connected through social events and political affiliations.

**Additional Claimed Incidents of Discrimination and/or Retaliation**

On August 14, 2005, Seybold received a verbal warning for an incident that occurred at the jail; another officer accused Seybold of leaving her work station, but Seybold insists that it was simply a miscommunication.  The shift Commander also issued Seybold a written reprimand for the same incident on August 30.  On October 8, Seybold went on medical leave until January 2, 2006, but in the meantime, on October 28, 2005, she received a performance evaluation from Commander Hettinger that assigned her low marks in the "Security" and "Officer and Inmate Safety" categories on the strength of the August jail incident.  Seybold disagreed in writing with this evaluation, indicating that she felt discriminated against and that she would be appealing the evaluation.  The form, which she signed, indicates that her appeal of the evaluation would be due on November 3, 2005.  A handwritten note by Sheriff Cooke on

the form indicates that, as of 1600 hours on November 4, 2005, he had not received an appeal.

The record contains a letter from Seybold to Sheriff Cooke, dated November 3, 2005, formally appealing her evaluation.   In the letter, she both disputes the facts underlying the August incident, and argues that the verbal and written warnings, combined with assurances she received from her supervisors, should have precluded the incident being counted against her in her evaluation.  Sheriff Cooke responded to this document in a memorandum dated February 7, 2006 (one month after Seybold returned from medical leave).  In that document, the Sheriff indicates that he did not receive Seybold's appeal until January 8, and alludes to an email exchange with Seybold (which is not in the record) in which she apparently admitted the appeal's lateness but claimed she should be permitted to turn it in late due to her medical leave. The Sheriff responded to this by noting that Seybold could have requested an extension or mailed her appeal to him while on leave, but that she did not do so.  He reiterated that her appeal was untimely, and that he would not consider it; he did, however, put a copy of her appeal in her personnel file alongside the offending evaluation.

A second incident occurred in February 2006.  In December of 2005, a woman who rented a room in the Seybold home filed a police report, claiming that Seybold's then-husband had threatened to kill the woman's child.   The Sheriff's Office conducted a Supervisor Inquiry regarding this charge, and asked to interview Seybold.  At first, she refused to sign the "Garrity Notice" informing her that, while what she said could impact her employment, it could not be used against her in a criminal prosecution.   Seybold

insisted on the presence of counsel; at a second meeting, with her attorney present, she signed the notice and answered the questions.  On February 18, Seybold was informed that the investigation would be dropped.

In 2007, Seybold had a further clash with her superiors.  At the time she was enrolled in an online program in an attempt to complete her bachelor's degree. According to Seybold, she had received permission from her supervisors to use the computers and printers at the Sheriff's Office during her off hours to facilitate her courses.  In May of 2007, during the final exam period of Seybold's classes, she claims that Deputy Chief Geesaman arbitrarily revoked her permission to use Sheriff's Office equipment, resulting in her failing to complete her classes and losing tuition money.

Another incident, this one giving rise to Seybold's Fourth and Fourteenth Amendment claims for false imprisonment, occurred in 2008.  On October 10, 2008, Seybold's second husband—with whom she was involved in a contentious divorce proceeding—filed charges of assault against her with Weld County.  Seybold claims that these charges were fraudulent attempts at harassment, but the Sheriff's Office nevertheless instituted an internal investigation.  Seybold had been out of the office on light duty, but when she returned on December 8, 2008, she was met in the lobby by the Internal Affairs Division Commander who informed her of the investigation.  Seybold got angry and insisted that she be allowed to leave to talk to her lawyer; she asserted loudly that she would fight the County over this issue.  Four or five other officers were present for this outburst.  Two Commanders told her to move into a side office; once there, they shut the door, stood in front of it, and would not let her leave, despite as many as seven

-7-

requests from Seybold to allow her to go and talk with her attorney.  The supervisors did not say anything, but continued to stand in front of the door; Seybold repeated multiple times that they were holding her against her will.  This situation continued for between five and fifteen minutes.  Seybold was never prosecuted for assault against her ex-husband, and she did not suffer any adverse actions from the Sheriff's Office due to the investigation (although she was never notified that the investigation had been discontinued).

Finally, in 2009, Seybold encountered issues with the manner in which the Sheriff's Office administered her sick leave benefits.  After the incident involving her now ex-husband's assault charges, Seybold's doctors in December 2008 told her not to return to work, due to anxiety and depression.  At this point, Seybold began to draw on her banked sick leave in order to supplement her income.  On January 12, 2009, the Sick Leave Bank denied Seybold's request for hours covering the period ending January 15; after receiving a note from her doctor and counselor, however, the Board reversed course and granted her benefits for this period.  On February 18, 2009, the Board again denied Seybold's request for hours.  This time, the Board based its decision on Seybold's doctor's assertion that her anxiety and depression resulted from work-related events, and upon a quotation from Seybold's deposition in this case attributing her condition to events that occurred at work.  In the Board's view, Seybold's condition was the result of incidents occurring at work, and so she was required to file a Worker's Compensation claim, rather than draw sick leave hours.  On February 25, 2009, Seybold received a letter from Weld County Human Resources stating that, as

-8-

she had no hours in February, she would have to pay $251.71 to continue her health insurance; when she did not pay by the deadline, her benefits were put on inactive status.

On March 2, 2009, Seybold filed for unemployment benefits.  The Sheriff terminated Seybold's employment on May 7, 2009.

**Procedural Background**

On January 4, 2006, Seybold filed a Charge of Discrimination with the CCRD which was cross-filed with the EEOC.  The charge alleged that "on or about July 9, 2005, prior to and continuing, the [Sheriff] failed to promote [Seybold] to the position of Commander."  (Doc. 198, Exh. A-10 at 1 (Charge of Discrimination).)  In her statement of discrimination, Seybold claimed:

> I believe I was unlawfully discriminated against because of my sex/female and/or in retaliation for complaining of sexual harassment and filing a grievance in violation of Title VII of the Civil Rights Act of 1964, as amended and Colorado's Anti-Discrimination law.  1) I perform the duties of the Correctional Officer III position in a satisfactory manner.  2) I believe I am being treated differently because of my sex (female) compared to similarly situated employees.  3) In or about October 1997, I complained of sexual harassment . . . and believe I am being retaliated against.  4) I have applied for five Commander positions and one Court lateral position. The Respondent has placed males in each position.  5) I am qualified and have met the minimum qualifications for each position.  6) A Commander position came available and on or about July 11, 2005, Commander Hettinger informed me I could not apply or receive a recommendation.  7) On July 15, 2005, I filed a formal grievance based on my sex and not being given the opportunity to apply for the available promotion.  After filing the grievance, I believe out of retaliation the Respondent hired a female with less experience in the jail.  8) I believe the Respondent further retaliated against me because my working conditions worsened; upper management has continuously scrutinized and reprimands me.  9) I believe the reason I cannot get promoted is because I filed  a sexual harassment complaint and grievance.

(Doc. 198, Exh. A-10 at 1.)  On September 7, 2007, the EEOC issued a determination that "there is reasonable cause to believe that Charging Party was denied a promotion and a transfer due to her sex (female).  Furthermore, the evidence showed Charging Party was subject to retaliation."  (Doc. 127 (Second Am. Compl.), Exh. 2, at 1.) Nevertheless, the Department of Justice declined to pursue the matter, and issued a Notice of Right to Sue on February 4, 2008.

Seybold filed a Complaint in this Court on May 2, 2008, and this Court referred the pretrial matters to Magistrate Judge Watanabe.  The original Complaint was superseded by an Amended Complaint on October 14, 2008, and a Second Amended Complaint on March 9, 2009.  On April 3, 2009, the Sheriff filed a Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), and a Motion for Summary Judgment seeking judgment on all of Seybold's claims on June 30, 2009.  After requesting and receiving numerous extensions to the deadline to file a Response, Seybold's attorney, Richard K. Blundell, moved to the Court to withdraw as Seybold's attorney.  Although Seybold opposed this motion, Magistrate Judge Watanabe granted it, and Seybold now appears pro se.  Magistrate Judge Watanabe ordered that the Clerk of Court make a good faith effort to secure pro bono counsel for Seybold, but reminded her that she was still responsible for complying with all deadlines and procedural rules until such time as counsel was found for her.

Despite her lack of counsel, Seybold filed a Response to the Sheriff's Motion, but the Response was submitted without any supporting evidentiary material, despite referring to a number of Exhibits in its text.  The Court invited Seybold to supplement

her Response with the referred-to Exhibits, and warned her that if she did not so supplement her Response, the Court would rule on the Motion with the benefit of only the evidentiary material filed by the Sheriff.  Seybold did not file any supplementary material, and so the Court will now rule on the Motion.

## Discussion

### I.      Jurisdiction, Venue, and Legal Standard

Ms. Seybold invokes this Court's jurisdiction under 28 U.S.C. § 1331, which gives the Court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Venue is proper in this Court because all parties are residents of Colorado.  See 28 U.S.C. § 1391(b).

The Sheriff has moved for summary judgment under Federal Rule of Civil Procedure 56(c)(2), which states that judgment "should be rendered" for the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When examining the record to determine whether a genuine issue of material fact exists, the Court "consider[s] the evidence in the light most favorable to the non-moving party."  Bowling v. Rector, 584 F.3d 956, 964 (10th Cir. 2009).  Finally, because Ms. Seybold now appears before the Court pro se, the Court is bound to construe her pleadings and arguments liberally.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court must not, however, adopt the role of an advocate for a pro se litigant.  See id.  The Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other

litigants." Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009).  The Court will,

therefore, hold Ms. Seybold to the same procedural and evidentiary requirements that

counseled parties must meet.

## II.   Disposition of Claims

## A.   Title VII Claims

### 1.   Exhaustion

Claims under Title VII face strict jurisdictional limitations.  A charge of

discrimination must be filed with the EEOC within 300 days of any alleged

discriminatory act.  Tademy v. Union Pac. Corp., 520 F.3d 1149, 1167-68 (10th Cir.

2008).  The requirement that Title VII claims be administratively exhausted via an EEOC

Charge is jurisdictional; a plaintiff may not bring suit in federal court on unexhausted

claims.  Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996).  "Title VII requires each

discrete act of discrimination (such as termination, failure to promote, denial of transfer,

or refusal to hire) to be described in and the subject of a timely filed charge."  Montes v.

Vail Clinic, Inc., 497 F.3d 1160, 1166 (10th Cir. 2007) (emphasis added).  This

exhaustion requirement applies with equal force to claims that an employee was

retaliated against after filing an EEOC Charge.  Martinez v. Potter, 347 F.3d 1208,

1210-11 (10th Cir. 2003) (applying this rule where plaintiff claimed "an ongoing pattern

of retaliation from [the filing of an EEOC Charge] to his termination").

Under the rule of exhaustion, therefore, this Court has jurisdiction to consider

only those events described in Seybold's EEOC Charge and occurring within the 300-

day window prior to Seybold's filing of the Charge.  Seybold filed her Charge on January

4, 2006; 300 days prior to that date is March 10, 2005.[3]  Therefore, the Court may

consider only those events occurring between March 10, 2005, and January 4, 2006,

and described in the Charge, in assessing Seybold's Title VII claim.

### 2.    Disparate Treatment Claim

Seybold's properly-exhausted Title VII claim is based on the Sheriff's failure to

promote her to the position of Commander.  This amounts to a claim of disparate

treatment because of Seybold's sex, and so is analyzed under the familiar Title VII

burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To make out a prima facie claim of disparate treatment, Ms. Seybold must establish

that: "(1) she was a member of a protected class; (2) she applied for and was qualified

for the position; (3) despite being qualified she was rejected; and (4) after she was

rejected, the position was filled by someone outside the protected class."  MacKenzie v.

City and County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005).  If Seybold can make

this showing, the burden shifts to the Sheriff "to articulate some legitimate,

nondiscriminatory reason" for his decision not to promote Seybold.  McDonnell Douglas,

411 U.S. at 802.  If the Sheriff can do so, Seybold may rebut that defense by proving

---

[3] Relying on Semsroth v. City of Wichita, 304 F. App'x 707 (10th Cir. 1008)
(unpublished),  Seybold asserts that the Court should begin counting her 300-day
period from the date she filed her intake questionnaire with the EEOC, November 17,
2005.  Setting aside the fact that Semsroth, as an unpublished case, is not precedential,
the Court notes that Seybold's intake questionnaire is nowhere in the record.  In
Semsroth, the Tenth Circuit examined the content of the plaintiffs' intake questionnaires
to determine whether they included sufficient information so that they could be treated
as the functional equivalent of Charges.  304 F. App'x at 713-14.  Without examining the
content of Seybold's questionnaire, the Court could not—even if it were inclined to—
apply Semsroth here.

that the Sheriff's proffered reason was in fact a pretext for discrimination.  <u>See</u> <u>id.</u> at

804.

The only discrimination that Seybold complains of—aside from her retaliation

claims—is the Sheriff's failure to promote her to the position of Commander.  The only

occasion that Seybold applied for a Commander position within the 300-day window

opened by her EEOC Charge was in July 2005.  As noted above, on that occasion, a

female officer was promoted to Commander in lieu of Seybold.  Thus, without

commenting on the validity of the first three elements of Seybold's prima facie case, that

case is fatally flawed at the fourth step.  Because the position at issue was filled by a

member of the same protected class of which Seybold is a member, she cannot

establish a prima facie case of disparate treatment based on the Sheriff's failure to

promote her in July 2005.  And because this is the only Commander opening for which

she applied during the period over which the Court has jurisdiction, the Court must

award summary judgment on her disparate treatment claim to the Sheriff.

**3.      Title VII Retaliation Claim**

The Court next addresses Ms. Seybold's Title VII retaliation claim.  "To establish

a prima facie case of retaliation under Title VII, a plaintiff  must show that (1) she

engaged in protected opposition to discrimination; (2) she suffered an adverse action

that a reasonable employee would have found material; and (3) there is a causal nexus

between her opposition and the employer's adverse action."  <u>Johnson v. Weld County,</u>

<u>Colo.</u>, ___ F.3d ____, 2010 WL 430914, at *10 (10th Cir. 2010) (<u>quoting</u> <u>Williams v.</u>

W.D. Sports, N.M., Inc., 497 F.3d 1079, 1086 (10th Cir. 2007) (quotation marks omitted)).

There are only two conceivable occasions in the record in which Seybold engaged in protected opposition to discrimination: her 1997 sexual harassment complaint against her co-worker, and her filing of her Charge in this case, in January 2006.  As to the sexual harassment complaint, Seybold has put forward no evidence whatsoever to satisfy the third element of the retaliation test: that there is a causal nexus between her complaint and the adverse actions she has suffered.  She has offered vague assertions and speculations of a "good ole boy" conspiracy operating throughout the Weld County Sheriff's Office, but has not attempted to tie her sexual harassment claim concretely to the Sheriff's failure to promote her to Commander (or even establish that the Sheriff was personally aware of her 1997 sexual harassment claims against her co-worker).  And given the lapse of time between her sexual harassment claim and any potentially retaliatory action—five years from the claim to the first time Seybold applied for a Commander position, and eight years until the specific incidents that were the subject of her EEOC Charge—the Court is unwilling to infer causation in the face of a total lack of evidence.  Therefore, Seybold has failed to establish that she was retaliated against for reporting her coworker's alleged sexual harassment in 1997.

A claim that Seybold was retaliated against because of her filing of her EEOC Charge also fails, for two reasons.  First, it is not exhausted, as the retaliation claim itself has not been the subject of an EEOC Charge.  Second, even were that not the

case, Seybold has not put forward any evidence—beyond conclusory speculation in her deposition—of a causal nexus between her filing of a Charge and the Sheriff's allegedly retaliatory behavior.  Therefore, the Court will grant summary judgment in favor of the Sheriff on Seybold's Title VII retaliation claims.[4]

## B.    Constitutional Claims

Seybold has asserted three general constitutional-based claims against the Sheriff: (1) that the Sheriff retaliated against her for exercising her First Amendment rights; (2) that the Sheriff deprived Seybold of her rights to procedural and substantive due process and equal protection; and (3) that the Sheriff, through his subordinates, unlawfully detained her in violation of the Fourth and Fourteenth Amendments.  Only the second of those sets of violations was brought explicitly pursuant to 42 U.S.C. § 1983, but as Seybold seeks damages for all of the constitutional violations, the Court will liberally construe her complaint and examine all of her constitutional claims under the rubric of § 1983.[5]

In order to press § 1983 claims against the Sheriff, Seybold must establish that the Sheriff was personally involved in the actions that led to the alleged deprivation of rights.  "Supervisory status alone does not create § 1983 liability.  Rather, there must be

---

[4] In his Reply brief, the Sheriff refutes a number of Title VII-related claims that he feels Seybold may have raised in her Response, such as a disparate impact claim, a hostile work environment claim, and a pay discrimination claim under the Lilly Ledbetter Fair Pay Act of 2009.  The Court finds that these claims were never fairly raised by Seybold, so the Court will not address the Sheriff's arguments on them.

[5] Of course, when Seybold's complaint was drafted she had the benefit of counsel, dubious benefit though it may have been.  The Court will nevertheless now accord Seybold liberal construction of her documents as a pro se litigant—even of those documents drafted by her attorney prior to his withdrawal.

an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations, alterations, and quotation marks omitted).

Further, state law governs the statute of limitation for actions brought under § 1983. See Kripp v. Luton, 466 F.3d 1171, 1174 (10th Cir. 2006). Colorado law provides that "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" are subject to a general two-year statute of limitation. Colo. Rev. Stat. § 13-80-102(1)(g). Seybold filed this action on May 2, 2008, and so only those actions occurring between May 2, 2006, and the filing of the Complaint may be the basis of § 1983 liability.[6]

### 1.    First Amendment Retaliation

The Court will first examine Seybold's claim that the Sheriff retaliated against her because of her exercise of her First Amendment right to free speech. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). "[A] public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 2001).

---

[6] In addition to these threshold matters, the Sheriff has asserted the defense of qualified immunity and argued that Seybold has failed to establish the elements necessary to impose municipal liability for any violations committed by the Sheriff in his official capacity. Because the Court here holds that Seybold has failed to establish a genuine issue of material fact that any constitutional violation occurred at all, the Court will not address these additional defenses.

As an initial step in analyzing a First Amendment retaliation claim, "the court must first identify the speech which resulted in the alleged retaliation." Deschenie v. Bd. of Educ. of Cent. Consol. School Dist. No. 22, 473 F.3d 1271, 1276 (10th Cir. 2007) (quotation marks omitted).  Once the claimed speech is specifically identified, courts in this circuit analyze First Amendment retaliation claims under the five-prong Garcetti/Pickering test:

> First, the court must determine whether the employee speaks pursuant to his official duties.  If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern.  If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202-03 (10th Cir. 2007).  The Tenth Circuit has "noted that implicit in the Garcetti/Pickering test is a requirement that the public employer have taken some adverse employment action against the employee." Couch v. Bd. of Trustees of Mem. Hosp. of Carbon County, 587 F.3d 1223, 1235-36 (10th Cir. 2009) (quotation marks and alterations omitted).

Under this standard, it is clear that Seybold's First Amendment retaliation claim fails at the first step of the analysis: she has not identified a specific statement for the

speaking of which she suffered retaliation from the Sheriff.  In her deposition, Seybold made vague references to speaking out against the "good ole boy" network and referred to herself as a "whistle-blower," but she did not in either her complaint or in her Response to the Sheriff's summary judgment motion specifically identify a discrete instance of protected speech for which she was subjected to retaliation.  The Court will not—under the rubric of liberal construction—identify such an instance for her. Therefore, the Court holds that Seybold failed to carry her burden on summary judgment, and will enter judgment for the Sheriff on Seybold's First Amendment retaliation claim.

## 2.      Due Process and Equal Protection Claims

Seybold has asserted that the Sheriff deprived her of her rights to substantive and procedural due process and equal protection, in violation of 42 U.S.C. § 1983.  The actions forming the basis for this claim are entirely unclear.  In the complaint, the claim merely adopts the eighty-five paragraphs of factual allegations preceding it, and asserts that the Sheriff's conduct was "arbitrary, capricious, and retaliatory," and that the Sheriff "engaged in an abuse of power, political patronage, unfair and unconscionable governmental operations and procedures, and gross disparate treatment through [his] perversion of [his] official duties" and that Seybold has suffered damages thereby. (Doc. 127 at 27.)

In order to make out a due process claim, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an

appropriate level of process." Riggins v. Goodman, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting Montgomery v. City of Ardmore, 365 F.3d 926, 935 (10th Cir. 2004) (quotation marks omitted)). "An individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'" Teigen v. Renfrow, 511 F.3d 1072, 1078-79 (10th Cir. 2007) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Property interests are "created by independent sources such as state or federal statute, a municipal charter or ordinance, or an implied or express contract." Carnes v. Parker, 922 F.2d 1506, 1509 (10th Cir. 1991). This requirement of a protected property interest applies with equal force to both procedural and substantive due process claims. Potts v. Davis County, 551 F.3d 1188, 1192 (10th Cir. 2009) ("A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right.").

Presumably, the gravamen of Seybold's due process complaint is that she was denied a promotion to commander without due process.[7] Seybold has not pointed to any external source—be it state or municipal law or a contract—giving her a protected property interest in a promotion to Commander. Without making such a showing, her due process claim is fundamentally flawed, and the Court will grant summary judgment to the Sheriff on that claim, in both its procedural and substantive dimensions.

---

[7] The only other incident that might conceivably give rise to a due process claim would be the Sheriff's refusal to entertain Seybold's appeal of her 2005 evaluation. This refusal, however, occurred outside the two-year limitation period on § 1983 claims.

Finally, with respect to an equal protection claim, Seybold has not argued that she has been treated differently on the basis of membership in a protected group (with the exception of the Title VII claims addressed above), and the Supreme Court has squarely held that no equal protection claim based on a "class of one" theory exists in the public employment context, and so Seybold cannot maintain such an allegation. Engquist v. Oregon Dept. of Agr., 128 S. Ct. 2146, 2148-49 (2008).  If her equal protection claim is based on the Sheriff's alleged discrimination based on sex, it fails because she has not produced any evidence that the Sheriff discriminated against women intentionally, as required under the Equal Protection Clause.  See Washington v. Davis, 426 U.S. 229, 239-42 (1976) (holding that a law only violates the Equal Protection Clause if motivated by a discriminatory purpose).  Therefore, the Court will grant the Sheriff summary judgment on Seybold's equal protection claim.

### 3.    Unlawful Detention Claim

In this claim, Seybold alleges that the Sheriff violated her Fourth and Fourteenth Amendment[8] rights on December 8, 2008, when two Commanders asked her to come into a side office when she got upset at the prospect of an Internal Affairs investigation, and then detained her in that office for five to fifteen minutes.  As an initial matter, Seybold has not provided any evidence that the Sheriff personally participated in any way in the actions of the two Commanders.  Her claim against him in his individual capacity, therefore, must fail because she has done nothing more than allege supervisory status.  See Gallagher, 587 F.3d at 1069.

---

[8] Seybold alleges that the Sheriff's actions violated her Fourth Amendment rights, made applicable to the states via the Fourteenth Amendment.

As to her claim against the Sheriff in his official capacity, the Court will treat that claim as one against a local government entity, and so Seybold must show that "(1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." Moss v. Kopp, 559 F.3d 1155, 1168 (10th Cir. 2009).  The Tenth Circuit has recognized that a local government body may be liable under § 1983 only where "the final policymaker takes the unconstitutional action," id. at 1168-69 (quotation marks omitted), where the policymaker approves the subordinate action, or where the subordinate acted pursuant to a widespread practice that egregiously insulates the entity from liability, id.  As noted above, Seybold has not alleged that the Sheriff was personally involved in her brief detention, that he approved the Commanders' actions in detaining her, or that the Commanders acted pursuant to a widespread practice of depriving individuals of their constitutional rights.  Therefore, her official capacity claim fails as well.

The Court will therefore grant the Sheriff's motion for summary judgment on Seybold's Fourth Amendment claim.

## C.      ERISA/COBRA Continuing Health Coverage Claim

In her Second Amended Complaint, Seybold added a claim for "Retaliation via Denial of Vested Benefits in Violation of 29 U.S.C. § 1161-1168."  (Doc. 127 at 28.) This claim presumably arises from the difficulties Seybold encountered in obtaining Sick Leave Bank hours in January and February of 2009, and the County's eventual decision to deny Seybold those hours because, in its view, her inability to work arose from incidents occurring at work, and thus should have instead been the basis of a Worker's

Compensation claim.  In her Response to the Sheriff's summary judgment motion,

Seybold does not address this claim in any way, despite the Sheriff putting forward

arguments for why the Court should grant him summary judgment on the claim.

   The Court is mindful of the difficult situation in which Seybold finds herself, given

the withdrawal of her counsel.  The Court is also aware of its duty to construe pro se

litigants' pleadings liberally.  But to construct arguments on an issue that is not

addressed at all in a pro se litigant's filings would cross the line from liberal construction

into advocacy.  That line the Court must not cross.  See United States v. Pinson, 584

F.3d 972, 975 (10th Cir. 2009) (citing Hall, 935 F.2d at 1110).  On summary judgment,

Seybold is required to put forward evidence demonstrating the existence of a genuine

issue of material fact; by failing to even reference her ERISA/COBRA claim in her

Response, she has failed to do so.

## Conclusion

   The Court recognizes that, since the withdrawal of her attorney, this case has

been a difficult process for Seybold.  Our legal system can seem a confusing maze to

pro se litigants, and procedural requirements in particular pose challenges for un-

counseled parties.  However, in a civil case, the party bringing suit has a responsibility

to abide by the rules of the Court, with or without an attorney to assist them.  Thus, we

require pro se litigants to abide by all the same rules and requirements as counseled

parties.  Seybold has failed to establish by competent evidence the existence of a

genuine issue of material fact on any of her claims, or to refute that the Sheriff is entitled

to judgment as a matter of law.

It is therefore ORDERED that:

- Defendant's Motion for Summary Judgment (Doc. 196) is GRANTED; judgment shall be entered in favor of the Defendant on all claims.

Dated this __23rd__ day of _____February_____, 2010.

BY THE COURT:

*s/ David M. Ebel*

U. S. CIRCUIT COURT JUDGE